FILED

2021 Mar-08  AM 09:36
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION**

| | | |
|---|---|---|
| RYAN ANTHONY BROCATO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.:  5:20-cv-01150-ACA-JHE |
| | ) | |
| GOVERNOR KAY IVEY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

On November 3, 2020, the plaintiff filed an amended *pro se* complaint in which he alleges violations of his civil rights while incarcerated in Limestone Correctional Facility, in Harvest, Alabama.  (Doc. 12).  The plaintiff names as defendants Governor Kay Ivey, Alabama Department of Corrections Commissioner Jefferson Dunn, the Alabama Department of Corrections, and Wardens Scarlette Robinson, Deborah Toney, and William Streeter.  (*Id*., at 2-4).  The plaintiff seeks prospective relief only.  (*Id*., at 9).  In accordance with the usual practices of this court and 28 U.S.C. § 636(b)(1), the complaint was referred to the undersigned magistrate judge for a preliminary report and recommendation.  *See McCarthy v. Bronson*, 500 U.S. 136 (1991).

### I. Standard of Review

The Prison Litigation Reform Act, as partially codified at 28 U.S.C. § 1915A, requires this court to screen complaints filed by prisoners against government officers or employees.  The court must dismiss the complaint or any portion thereof that it finds frivolous, malicious, seeks monetary damages from a defendant immune from monetary relief, or which does not state a claim upon which relief can be granted.  *Id.*  Moreover, the court may *sua sponte* dismiss a prisoner's complaint prior to service.  *See* 28 U.S.C. § 1915A(a).

Under § 1915A(b)(1) and § 1915(e)(2)(B)(i), a claim may be dismissed as "frivolous where it lacks an arguable basis in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim is frivolous as a matter of law where, *inter alia*, the defendants are immune from suit or the claim seeks to enforce a legal right that clearly does not exist. *Id*. at 327.

Moreover, a complaint may be dismissed pursuant to 28 U.S.C. § 1915A (b)(1) for failure to state a claim upon which relief may be granted. A review on this ground is governed by the same standards as dismissals for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Jones v. Bock*, 549 U.S. 199, 215 (2007). In order to state a claim upon which relief may be granted, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and must be a "'plain statement' possess[ing] enough heft to 'show that the pleader is entitled to relief.'" *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 557 (2007) (alteration incorporated). But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. Similarly, when a successful affirmative defense, such as a statute of limitations, appears on the face of a complaint, dismissal for failure to state a claim is also warranted. *Jones v. Bock*, 549 U.S. at 215.

A *pro se* pleading "is held to a less stringent standard than a pleading drafted by an attorney" and is liberally construed. *Jones v. Fla. Parole Comm'n*, 787 F.3d 1105, 1107 (11th Cir. 2015). However, it still must allege factual allegations that "raise a right to relief above the speculative level." *Saunders v. Duke,* 766 F.3d 1262, 1266 (11th Cir. 2014) (internal quotation marks omitted).

2

## II. Factual Allegations

The plaintiff asserts Governor Ivey has failed to rectify overcrowding in Alabama prisons, despite her mandates of maximum capacities for institutions and businesses due to the COVID-19 pandemic. (Doc. 12 at 6). The plaintiff claims Governor Ivey has put him at risk of serious harm in not allowing him to social distance and not acting to reduce the overcrowded prison populations. (*Id*.). The plaintiff states Commissioner Dunn has violated the plaintiff's Eighth Amendment rights by allowing him to become "prey" to prison gangs, forcing him to comply with "tribal gang laws out of fear for retaliatory behavior of gang members." (*Id*.). The plaintiff further alleges the failure to separately house gang members violates his Fourteenth Amendment equal protection rights. (*Id*., at 6-7). Additionally, he alleges that prison overcrowding has prevented the plaintiff's compliance with Governor Ivey's social distancing guidelines. (*Id*., at 7).

The plaintiff alleges the three wardens named as defendants deliberately allowed a COVID-19 positive inmate into Limestone Correctional Facility, then placed him in the most crowded dorm, where he infected other inmates, two of whom died. (Doc. 12 at 7). Other inmates have since tested positive for COVID-19. (*Id*.). According to the plaintiff, the wardens acted in deliberate indifference to the plaintiff's health. (*Id*.). The plaintiff also asserts that, because his dorm has been on quarantine lockdown, allowing inmates from other dorms to enter and exit the quarantine dorm violates his Fourteenth Amendment equal protection rights. (*Id*.).

Finally, the plaintiff alleges the Alabama Department of Corrections ("ADOC") allows unsanitary living conditions and overcrowding to persist. (Doc. 12 at 8). These conditions deprive the plaintiff of rights guaranteed to the citizens of Alabama, in violation of the Eighth and Fourteenth Amendments. (*Id*.).

### III. Analysis

#### A. Official Capacity Claims

Under the Eleventh Amendment, state officials sued for damages in their official capacities are immune from suit in federal court. *Jackson v. Ga. Depart. of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994); *see also Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1524 (11th Cir. 1995) ("A state, a state agency, and a state official sued in his official capacity are not 'persons' within the meaning of § 1983."). However, claims for prospective relief are not so barred. *See Quern v. Jordan*, 440 U.S. 332, 338 (1979) (holding "in a 42 U.S.C. § 1983 action … a federal court's remedial power consistent with the Eleventh Amendment is necessarily limited to prospective injunctive relief, *Ex Parte Young* [209 U.S. 123 (1908)] and may not include a retroactive award which requires payment of funds from the state treasury."); *Edwards*, 49 F.3d at 1524 (holding "a state official sued in his official capacity is a person for purposes of § 1983 when prospective relief … is sought."). To state a viable claim for such relief, a plaintiff must allege a constitutional violation by the official while acting in his official capacity. *Grizzle v. Kemp*, 634 F.3d 1314, 1319 (11th Cir. 2011). A state official is subject to suit in his official capacity when, by virtue of his office, he is imbued with the responsibility to enforce the law at issue in the suit. *Id.*

#### B. Supervisory Claim—Governor Ivey

"[S]upervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Keith v. DeKalb Cty., Ga.*, 749 F.3d 1034, 1047 (11th Cir. 2014); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (holding doctrine of respondeat superior is inapplicable to § 1983 actions); *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994) (holding 42 U.S.C. § 1983 does not allow a plaintiff to hold supervisory officials liable for the actions of their subordinates under either a theory of respondeat

4

superior or vicarious liability); *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (holding that a supervisory official is liable only if he "personally participate[d] in the alleged unconstitutional conduct or [if] there is a causal connection between [his] actions ... and the alleged constitutional deprivation."). Because vicarious liability is inapplicable to § 1983 actions, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

To satisfy the foregoing, the plaintiff must allege either that a supervisor-defendant personally participated in the unconstitutional conduct or show a causal connection between the supervisor's actions and the alleged constitutional violation. *Mathews v. Crosby*, 480 F.3d 1265, 1270 (11th Cir. 2007). A causal connection may be established when 1) a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he or she fails to do so; 2) a supervisor's custom or policy results in deliberate indifference to constitutional rights; or 3) facts support an inference that the supervisor directed subordinates to act unlawfully or knew that subordinates would act unlawfully and failed to stop them from doing so. *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014) (citation omitted); *see also West v. Tillman*, 496 F.3d 1321, 1329 (11th Cir. 2007) (to put a supervisor on notice of need to correct subordinates, the deprivation in question must "constitute widespread abuse [that is] obvious, flagrant, rampant, and of continued duration, rather than isolated occurrences.").

The plaintiff alleges Governor Ivey, as the "Chief Officer of the State of Alabama" has the "authority to direct the Alabama Department of Corrections to comply with her policies and mandates," but has failed to alleviate overcrowding. (Doc. 12 at 6). However, the plaintiff fails to allege defendant Ivey, in her role as Governor, participated in or has a causal connection to any

of the alleged violations of his constitutional rights regarding conditions at Limestone. Merely stating that defendant Ivey should be liable because she is Governor, without any facts which could support an inference that "she knew of, or acted deliberately toward" the plaintiff's health and safety, does not suffice.[1]

To the extent the plaintiff alleges defendant Ivey should be held responsible for prison employees' failures to follow appropriate COVID-19 guidelines simply because she is governor, that claim fails for the same reason. The plaintiff's claims against defendant Ivey are therefore due to be dismissed for failing to state a claim upon which relief could be granted. *See* 28 U.S.C. § 1915A(b)(1).

### C. Supervisory Claim—Commissioner Dunn

As with Governor Ivey, to bring an Eighth Amendment claim against defendant Commissioner Dunn in his role as a supervisor, the plaintiff must allege either that Dunn personally participated in the unconstitutional conduct or show a causal connection between his actions and the alleged constitutional violation. *Mathews*, 480 F.3d at 1270.

The plaintiff alleges that gang rule has overtaken the prison and that the plaintiff must comply with the gangs or risk injury. (Doc. 12 at 6). The plaintiff states Commissioner Dunn's failure to separate gang members from the general population increases the plaintiff's risk of harm. Under the Eighth Amendment, "[p]rison officials have a duty to protect prisoners from violence at the hands of other prisoners. It is not, however, every injury suffered by one prisoner at the hands of another that translates into a constitutional liability." *Purcell ex rel. Estate of Morgan v.*

---

[1] In the Order to Amend entered on October 15, 2020, the magistrate judge instructed the plaintiff that "[t]o the extent the plaintiff wishes to pursue his claims against Governor Ivey, he must allege facts demonstrating she is "the official [] responsible for the challenged action." (Doc. 11 at 2-3 (quoting *Luckey v. Harris,* 860 F.2d 1012, 1015-16 (11th Cir. 1988)).

*Toombs County, Ga.,* 400 F.3d 1313, 1319 (11th Cir. 2005) (quotation and alterations omitted). To state a viable failure to protect claim, a plaintiff must allege facts which show: (1) a substantial risk of serious harm; (2) the prison officials' deliberate indifference to that risk; and (3) causation. *Goodman v. Kimbrough*, 718 F.3d 1325, 1331 (11th Cir. 2013).   To establish deliberate indifference in this context, a prisoner must show that prison officials "subjectively knew of the substantial risk of serious harm and that [the prison officials] knowingly or recklessly disregarded that risk." *Id*. at 1332 (quoting *Hale v. Tallapoosa County*, 50 F.3d 1579, 1583 (11th Cir. 1995). "To be deliberately indifferent a prison official … must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Purcell*, 400 F. 3d at 1319–20 (citation omitted).   Thus, simple negligence is not actionable under § 1983, rather a plaintiff must allege "a conscious or callous indifference to a prisoner's rights." *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982).

The plaintiff does not assert that defendant Dunn has any knowledge of threats to the plaintiff by gang members.  The plaintiff does not allege he has notified any of the named defendants or other prison officials of his fear of harm from prison gang activity, or that he has suffered any concrete injury due to the gangs forcing drugs upon non-gang members.  While for the purposes of 1915A review the undersigned accepts as true the plaintiff's allegation that prison gangs "force drugs on weaker inmates then extort them and their families," the plaintiff does not allege either that defendant Dunn knows this occurs and refuse to take any action, or that the

plaintiff has personally been the victim of such conduct.  Those shortcomings in the amended complaint translate into a failure to state a claim upon which relief may be granted.[2]

### D. Claims Concerning COVID-19

The plaintiff faults Commissioner Dunn for not reducing prison overcrowding to comply with Governor Ivey's COVID-19 guidelines.  (Doc. 12 at 7).  The plaintiff further alleges the defendant wardens intentionally allowed a COVID-19 positive inmate to be brought into Limestone Correctional Facility and placed in a crowded dorm.  (*Id.*, at 7).  That inmate spread the virus to other inmates, two of whom died.  (*Id.*).  Another inmate, who lives in the same dorm as the plaintiff, tested positive, resulting in the entire dorm being placed on quarantine lockdown, although inmates from other dorms are allowed to enter and exit the quarantine dorm.  (*Id.*).

To establish an Eighth Amendment deliberate-indifference claim against defendants Dunn and/or the wardens, the plaintiff must make both an objective and a subjective showing.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  Under the objective component, the plaintiff must demonstrate "a substantial risk of serious harm."  *Id.*  In *Swain v. Junior*, 961 F.3d 1276 (11th Cir. 2020), the Court acknowledged "that the risk of COVID-19 satisfies this requirement."  *Id.*, at 1285.  Under the subjective component, the plaintiff must prove "the defendants' deliberate indifference" to that risk of harm by making three sub-showings: "(1) subjective knowledge of a

---

[2] To the extent these claims form the basis of the plaintiff's reference in his amended complaint to the Alabama Criminal Code (doc. 12 at 5), the plaintiff may not bring criminal charges against the defendants through a private lawsuit.  *See e.g., Hanna v. Home Ins. Co.*, 281 F.2d 298, 303 (5th Cir. 1960) ("The sections of Title 18 may be disregarded in this suit.  They are criminal in nature and provide no civil remedies."); *Smith v. Shook*, 237 F.3d 1322, 1324 (11th Cir. 2001) (holding that a "private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another") (quotations and citation omitted); *Thibeaux v. U.S. Atty. Gen.*, 275 F. App'x 889, 893 (11th Cir. 2008) (finding criminal code section does not provide a civil cause of action).

risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *Lane v. Philbin*, 835 F.3d 1302. 1308 (11th Cir. 2016) (quotation omitted).

"A prison official's deliberate indifference to a known, substantial risk of serious harm to an inmate violates the Eighth Amendment." *Harrison*, 746 F.3d at 1298 (citation omitted). Clearly, the defendants have "subjective knowledge" of the risk that COVID-19 poses. *See Swain*, 961 F.3d at 1285. Therefore, as in *Swain*, the inquiry here "hinges on whether the defendants 'disregard[ed]' the risk 'by conduct that is more than mere negligence.'" *Id*. *See e.g., Helling v. McKinney*, 509 U.S. 25, 35-36 (1993) (holding that a plaintiff may state an Eighth Amendment claim against prison officials based upon conditions which "pose an unreasonable risk of serious damage to his future health," if he shows "he himself is being exposed" to that potential health risk and that "prison authorities are ignoring the possible dangers posed by exposure").

Taking the plaintiff's factual allegations as true, which the court must for purposes of § 1915A review, the plaintiff's assertion—that he is in a quarantine dorm with an increased risk of contracting COVID-19 due the defendants' actions or inactions in regard to the pandemic— states a sufficient claim for deliberate indifference to require Commissioner Dunn and the defendant wardens to respond.[3]

---

[3] The undersigned is aware that, to date, the federal courts within Alabama which have considered the reasonableness of ADOC's response to COVID-19 have found no fault with that response. *See e.g., Charest v. Ivey*, 2020 WL 5100634, *15-16 (S.D. Ala. July 6, 2020); *Dixon v. Ivey,* 2020 WL 4757938, *12, 13 (M.D. Ala. June 26, 2020) (holding "[w]ith respect to … the inability of the defendants to ensure that inmates practice proper social distancing at all times, the Eleventh Circuit stated '[f]ailing to do the 'impossible' doesn't evince indifference, let alone deliberate indifference,'" and that the court "simply cannot conclude that, when faced with a perfect storm of a contagious virus and the space constraints inherent in a correctional facility, the defendants here acted unreasonably by 'doing their best[.]'"); *see also Benavides v. Gartland*, 2020 WL 3839938, *4 (S.D. Ga. July 8, 2020) ("the Constitution does not require that detention facilities

**E. Equal Protection Claims**

The plaintiff claims the wardens' decision to keep him under a quarantine lockdown while allowing inmates from other dorms to "freely enter and exit the quarantine dorm" violates his Fourteenth Amendment equal protection rights.  (Doc. 12 at 7).  The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  The Equal Protection Clause requires that the government treat similarly situated people in a similar manner.  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  To establish an equal protection claim, "a prisoner must demonstrate that (1) he is similarly situated to other prisoners who received more favorable treatment; and (2) the state engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis."  *Sweet v. Sec'y Dep't of Corr.*, 467 F.3d 1311, 1318-19 (11th Cir. 2006).  Proof of discriminatory intent or purpose is required to show a violation of the Equal Protection Clause.  *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 264-265 (1977).

The plaintiff's amended complaint does not reflect any factual basis for an equal protection claim.  The plaintiff alleges neither that he was similarly situated to other prisoners who received more favorable treatment, nor that the difference in treatment stemmed from race, religion, national origin, or any other constitutionally protected basis.  At most, the plaintiff asserts that due to his exposure to a COVID-19 positive inmate, he is in a lockdown quarantine dorm and other prisoners are not.  This wholly fails to state an equal protection claim.  *See e.g., Bursey v. Ameigh*, 2010 WL 3119389, *3 (M.D. Fla. 2010) (holding that "unfair" is not synonymous with

---

reduce the risk of harm to zero.").  However, none of the suits to date specifically consider the conditions of confinement at Limestone Correctional Facility.

unconstitutional).  The Fourteenth Amendment "'does not require absolute equality or precisely equal advantages,'... but only that the state [] system be 'free of unreasoned distinctions.'"  *Ross v. Moffitt*, 417 U.S. 600, 612 (1974) (citations omitted); *see also Hammond v. Auburn University*, 669 F. Supp. 1555, 1563 (M.D. Ala. 1987) ("The Equal Protection Clause of the Fourteenth Amendment does not require all persons to be treated either identically or equally.").

Prison officials treating different prisoners differently, based upon potential exposure to COVID-19, provides no basis for an equal protection claim.

### F. Alabama Department of Corrections

The plaintiff asserts ADOC has failed to rectify his living conditions, depriving him of the same guarantees that the citizens of Alabama enjoy, in violation of his Eighth and Fourteenth Amendment rights.  (Doc. 12 at 8).  ADOC, a state agency, is not a person for purposes of § 1983. *See e.g., Papasan v. Allain*, 478 U.S. 265 (1986) (holding that a state agency, department or internal board thereof, as an extension of the State, is absolutely immune from suit, therefore unless the State consents to suit, the plaintiff cannot proceed against the respective defendant because the action is proscribed by the Eleventh Amendment.  "This bar exists whether the relief sought is legal or equitable").  But even if the plaintiff's claim could be construed as against Jefferson Dunn in his official capacity as Commissioner of ADOC, a prisoner does not have a constitutional right to living conditions on par with Alabama's non-incarcerated citizens.

The Eighth Amendment requires prison officials provide prisoners with reasonably adequate food, clothing, shelter, sanitation, medical care, and personal safety.  *Farmer*, 511 U.S. at 832 (citations omitted).  Overcrowding, standing alone, does not violate the Constitution.[4]

---

[4] To the extent that the "unsanitary living conditions" plaintiff identifies in his overcrowding claim against ADOC relate to his potential exposure to COVID-19, that claim is

Rather, courts must consider the impact of overcrowding on the prison's ability to provide adequate care.  *See e.g., Rhodes v. Chapman*, 452 U.S. 337, 347-49 (1981).  Objectively, "conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional.  To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society."  *Id.,* 452 U.S. at 347.

Because nothing in the plaintiff's amended complaint demonstrates ADOC fell below this constitutional minimum of providing reasonably adequate care, the plaintiff's claims against ADOC are due to be dismissed for failing to state a claim upon which relief may be granted.

## IV. Recommendation

For the reasons stated above, the undersigned **RECOMMENDS** the plaintiff's claims be **DISMISSED WITHOUT PREJUDICE** against all defendants except for the plaintiff's COVID-19 claim based on the, Eighth Amendment deliberate indifference claim defendants Dunn, Robinson, Toney, and Streeter.  The undersigned **FURTHER RECOMMENDS** that the plaintiff's remaining claim be referred to the undersigned magistrate judge for further action consistent with this opinion.

## V. Notice of Right to Object

The plaintiff may file specific written objections to this report and recommendation.  The plaintiff must file any objections with the Clerk of Court within fourteen (14) calendar days from the date the report and recommendation is entered.  Objections should specifically identify all findings of fact and recommendations to which objection is made and the specific basis for

---

duplicative of the claim identified *supra* in section III.D.  That claim cannot be asserted against ADOC for the reasons previously explained and is already proceeding forward against Commissioner Dunn in his official capacity.

objecting.  Objections also should specifically identify all claims contained in the complaint that the report and recommendation fails to address.  Objections should not contain new allegations, present additional evidence, or repeat legal arguments.

Failing to object to factual and legal conclusions contained in the magistrate judge's findings or recommendations waives the right to challenge on appeal those same conclusions adopted in the district court's order.  In the absence of a proper objection, however, the court may review on appeal for plain error the unobjected to factual and legal conclusions if necessary in the interests of justice.  11th Cir. R. 3-1.

Upon receipt of objections, a United States District Judge will review *de novo* those portions of the report and recommendation to which specific objection is made and may accept, reject, or modify in whole or in part, the undersigned's findings of fact and recommendations.  The district judge also may refer this action back to the undersigned with instructions for further proceedings.

The plaintiff may not appeal the magistrate judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  The plaintiff may only appeal from a final judgment entered by a district judge.

DONE this 8th day of March, 2021.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE